27 C.C.P.A.(Patents)

## In re DISCH.
### Patent Appeal No. 4381.

Court of Customs and Patent Appeals.
June 24, 1940.

Merwin F. Ashley, of Boston, Mass. (Victor Cobb, of Boston, Mass., and Arthur M. Hahn, of Washington, D. C., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming in part a decision of the examiner rejecting claims 1 to 13, inclusive, of appellant's application for a reissue of patent No. 2,050,831, issued to him on August 11, 1936. No claims were allowed. The examiner rejected the claims upon two grounds: 1, that the claims are based upon new matter inserted in the reissue application, and 2, that the claims are not patentable over the cited prior art.

The Board of Appeals affirmed the rejection by the examiner upon the first ground above stated, but refused to affirm his decision upon the second ground. Therefore the only question before us is whether appellant had inserted new matter in his reissue application upon which the claims are based.

Claim 1 is illustrative of the claims before us and reads as follows: "1. A counter unit for shoes comprising a stiff body portion molded to the required shape, an outer cover having overlapping edges bent inwardly over the edges of the body portion and fastened to the inner surface thereof, an inner lining cemented to the inner surface of the body portion having its marginal portions overlapping the bent-over edges of the outer cover, and stitches passing through the marginal edges of the outer cover, body portion and inner lining."

The subject matter of appellant's application is described by the examiner in his statement as follows: "This is an application for a reissue of Patent No. 2,050,-831, which relates to the construction of that portion of the upper of a shoe which surrounds the heel of the wearer. In conventional shoemaking an outer upper material with an inner lining layer are stitched together at their top edges. At the rear or quarter portion thereof a stiffening element, which may or may not be molded to shape, is inserted between the outer layer of the upper material and the inner lining material. These three layers are molded together over a last, and the bottom marginal portions are bent over and attached to the heel portion of an insole which has been previously placed on the last. An outsole is then attached over the inturned marginal portions of the upper materials. This results in a shoe having a conventionally stiff quarter portion."

The examiner described the invention as disclosed in the patent sought to be reissued as follows:

"In the following discussion the word 'quarter' will be used to designate the complete heel portion of the upper of a shoe including both layers of the exposed upper materials and the stiffening element therefor. The stiffening element will be referred to as a 'counter stiffener'. The principal point in controversy here is whether the original application for the issued patent was drawn to a complete premolded quarter portion of a shoe or merely to a counter stiffener therefor. Applicant contends that the original application clearly discloses a quarter, whereas the Examiner is of the opinion that a quarter is not disclosed with sufficient clarity, if it is disclosed at all, to support the matter inserted in the present application for a reissue.

"To describe the invention in accordance with the terms used in the original disclosure, the invention relates to 'counters or heel-stiffeners' or to a 'counter unit'. The described unit consists of three layers of material having a shape corresponding to that of the rear end of the upper portion of a shoe. The unit is made by first molding a 'counter' made of 'stiff leather or other suitable material' to the shape of the heel end of the upper. This includes an inturned flange at the bottom marginal portion of the counter. To the outer surface of this stiff molded counter an 'outer cover' of 'soft leather or fabric' is cemented. The outer cover is somewhat larger than the counter so that its marginal portions may be turned over the edges of the counter and cemented to the inner marginal portions of the counter. An 'inner lining' of 'soft leather' is then stretched over a form, and the inner surface of the counter is cemented to it. Any surplus lining extending beyond the edges of the counter are then trimmed off and a line of stitching is passed through the marginal portions of the outer cover, counter, and inner lining to firmly unite them. Exactly how this three-layer unit is incorporated in a shoe is not clear from the original disclosure as will be more particularly pointed out below."

Those portions of appellant's application which the Patent Office tribunals held were new matter read as follows:

"The term 'counter unit' wherever employed in this specification and in the appended claims refers to the complete back part of the upper of a shoe, sometimes referred to as a quarter, and includes the quarter portions of the upper, the lining and a molded counter stiffener secured between the upper and lining.

"* * * As also shown and described, the cover 15 and lining 17 are, respectively, of a nature appropriate to constitute the outer finished surface and the exposed inner or lining surface of the quarter of a finished shoe, and the free downwardly extending edges are folded, stitched and trimmed to constitute acceptable exposed free edges in a completed open shank shoe or slipper."

The examiner required that these paragraphs be cancelled as containing new matter; appellant declined to cancel the paragraphs.

We quote from the disclosure in appellant's patent as follows:

"My invention relates to footwear and more particularly to women's shoes and slippers, and especially to the *counters* or *heel-stiffeners* in such footwear which with ordinary usage have a tendency to collapse or to become so distorted as to impair their appearance as well as their serviceability in use.

"Ordinarily a cemented shoe or slipper is made with a space or pocket in the back of the shoe between the inner lining and *outer cover portion* of the shoe for the insertion of the *counter,* with the result that there has always been a large amount of undesired play in the back or heel portion of the shoe, because the *counter* did not reach the edges or contours of the enveloping pocket formed by the outer cover and inner lining. Frequently an unsightly distortion was occasioned because the edges of the lining and cover were turned over the *counter* in one direction or the other.

"To overcome these defects and disadvantages incidental to shoes and slippers of this type, I have now provided an *improved counter unit* that is separately assembled apart from the shoe, and the objects of my invention are, among other things, are to form a new type of cemented and stitched *counter unit* which will retain its shape under all conditions of use and wear, and at the same time give a smooth surface both inside and outside of the *counter* and in the shoe itself.

"The uniform edges of the lining and cover portion are secured by stitching throughout, which also maintains the exact outline of the *counter* with the result that the rigidly cemented and stitched parts after assembly form a *counter* or *heel-stiffener* that will give long wear and so preserve a neat appearance in the shoe.

"A further object of my invention is to provide an exceptionally simple but highly effective *counter unit* to be embodied in shoes and slippers of this type which may be economically manufactured and which will retain its natural shape and contour in use.

* * *

"The *counter* * * *, preferably made of stiff leather or other suitable material, comprises the body portion * * * molded to embrace the heel of the foot with the bottom portion bent inwardly to form the inturned flange * * * which overlies the margin of the heel seat as shown in Fig. 1, such flange * * * having the cut-out portion * * * that leaves a space for the insole * * * to be cemented or otherwise secured to the heelseat.

"The outer cover * * * is preferably formed and cut from soft leather or fabric in somewhat triangular form of slightly larger size and shape than the body portion * * * of the counter * * * so that its marginal edges * * * when cemented to the outer surface of the counter will overlap the edges of the counter * * * and the under part of the marginal flange * . * * as shown in Fig. 3.

"The inner lining * * * is also preferably formed and cut from soft leather in triangular form as shown in Fig. 2, with the V-shaped notch * * * cut therein so that when the inner lining * * * is molded and cemented to the inner surface of the counter * * *, the edges of the notch * * * will be brought together to form a smooth bottom surface around the top surface of the marginal flange * * * as shown in Fig. 4.

"The method of assembling and uniting the parts shown in Fig. 2 is substantially as follows: The counter * * * having been suitably shaped and the outer

cover * * * and inner lining * * * having been cut substantially in forms shown in Fig. 2, I next spread any suitable cement or other form of adhesive on the outer and inner surfaces of the counter * * *.

"I then hold the counter * * * firmly and stretch the outer cover * * * over the outside body portion * * * of the counter * * *, and fold the marginal edges * * * over the sides of the counter * * * and under the front edges of the inturned flange * * * of the counter, all as shown in Fig. 3.

"I then take the inner lining * * * and stretch same face down over a form, and while holding same rigidly, the counter * * * is pressed down over the lining * * *. The cement on the lining * * * and on the inner surface of the counter hold fast the lining * * * to the inside of the counter as shown in Fig. 4. Any surplus lining may be trimmed from the edges so that the outer edge of the lining * * * is coincident with the folded-over part of the outer cover * * * as shown in detail in Fig. 6.

"As the last step, a line of stitching * * * is passed through the cover * * *, the counter * * * and inner lining * * * as shown in Fig. 5, such stitching * * * firmly uniting the three component parts of my counter construction so as to avoid any play between the parts and also to provide a reinforced edge to the counter itself.

"The counter is incorporated in the shoe by placing same between the insole * * * and the heel seat (Fig. 1) in which the rear portion of the insole * * * is cemented or otherwise fastened through the cut-out portion * * * to the top of heel * * *, and the shoe is lasted in the usual manner. During the lasting operation this improved counter unit that I have shown and described becomes perfectly fitted in the shoe as shown in Fig. 1, where the counter preserves the proper contour of the shoe through the rigid cementing and stitching of the parts with the edges of the counter reinforced by the stitching * * *.

"By this arrangement the shoe is prevented from slipping up and down the heel, and uncomfortable chafing and resulting wear on the stocking and lining are avoided." (Italics ours; asterisks indicate reference numerals to drawings.)

The examiner in his statement called attention to the fact that Figure 1 of the patent drawings is concededly defective. That figure has been omitted from appellant's reissue application. The examiner further stated as follows:

"Applicant argues, and with considerable propriety, that the second and third paragraphs of the patent specification indicate that the invention actually intended was a quarter. However, a careful consideration of these paragraphs will show that they are equally applicable to a counter stiffener. Thus the undesired play in the heel portion of the shoe due to the counter not reaching the edges or contours of the enveloping pocket may merely show that a more perfectly fitting counter stiffener was aimed at; i. e., one which would fill in the contours better or to which the upper and lining materials could cling more easily. Likewise, the references in the third paragraph may be applied to a counter stiffener. Thus the smooth inside and outside surfaces may be obtained in the shoe by merely providing a smooth-surfaced counter stiffener. In fact, this latter purpose seems to be meant, for it is stated that the counter unit will 'give a smooth surface both inside and outside of the counter and in the shoe itself'. This clause implies that the counter unit surfaces are not the same as the shoe surfaces. If a quarter was intended, the surfaces of the counter unit and of the shoe at the heel portion thereof would be the same surfaces.

"In view of the above facts, it is not seen wherein there is a clear and definite disclosure in the original application which would support the definition of the term 'counter unit' given in the paragraph inserted after Line 32 of Page 2. * * *
* * *

"That the applicant may have actually invented a quarter is not in issue here. The position of the Examiner is that the original disclosure is so *indefinite* as to fail to show that a quarter was intended and that applicant has not sustained the burden on him."

The Board of Appeals in its decision stated:

"In the application from which the original patent issued, there was no statement that the parts 15 and 17 were of a nature appropriate to constitute the outer finished

surface and the exposed lining surface of the quarter of the finished shoe nor was there any statement that the parts under consideration constituted the exposed free edges in a completely open shank shoe or slipper.

"We are satisfied that the language appearing in the first three paragraphs of the patent and in the two paragraphs commencing on page 1, line 28 of column 2, would appear to have more meaning if applied to the construction described in the above-copied excerpt than if applied to the closed shank shoe with a laminated counter inserted between the usual leather exterior and inner shoe lining.

"The only example shown in the patent of a shoe type is that shown in Fig. 1 of the patent which has now been canceled. While in that closed shank type of shoe the laminated counter-unit is not shown between an outer covering and inner liner, it is clear, for reasons pointed out by the examiner, that that figure cannot be regarded as accurate. We believe also that it may be accepted as unusual for the outer side portion of the shoe upper to be joined to the back portion and terminate at the position shown by line 19. We are convinced, therefore, that this figure cannot be relied upon to disclose the parts 15 and 17 as exposed parts of a finished shoe.

"While we think it is entirely possible that the patentee may have had in mind the structure now urged by him, we are convinced that it cannot be assumed that those skilled in the art would construe the disclosure of that patent in that manner. We are of the view that it is improper to read into a patent a specific construction not definitely disclosed merely because there is some probability that the patentee may have had that construction in mind. We think that this is true even if it be assumed, without so holding, that the patent does not disclose any useful change over the art unless interpreted as urged by appellant."

The real question before us is whether appellant in his patent disclosed merely a laminated heel stiffener or counter, not including the outer cover or upper of the back portion of the shoe and inner lining thereof, or whether he fairly discloses that such counter unit consists of the outer cover or upper of the back portion of a shoe, the inner lining thereof, and a stiffener therebetween.

It is apparently appellant's theory that, if a disclosure in a patent is ambiguous, a reissue of the same is proper, and that additions to the original specification removing the ambiguity do not constitute new matter. This is true only to a limited degree. If the invention is not clearly disclosed in the patent, a reissue may not be had.

In the case of Morgan v. Drake et al., 36 F.2d 511, 513, 17 C.C.P.A., Patents, 729, we said:

"The subject-matter of the interference count must clearly have been disclosed in the patent upon which the reissue application is based, and it must clearly appear that the reissue applicant sought to secure protection of this particular subject-matter in his original application, just as he seeks it in the reissue application, and that his original patent failed to give this full protection for some one or more of the specific reasons which the statute mentions, such as inadvertence, accident, mistake, or other ground, recited in Rev.St. § 4916, as amended by Act May 24, 1928 (35 U.S.C.A. § 64).

"This we think is the indisputable meaning of the statute, and this interpretation follows the doctrine of Parker & Whipple Co. v. Yale Clock Co., supra [123 U.S. 87, 8 S.Ct. 38, 31 L.Ed. 100], which doctrine is stated in numerous other causes, many of them to be found cited in the 'notes of decisions' under 35 U.S.C.A. § 64.

"We do not mean to hold that the reissue provision of the law should be harshly construed or unduly limited, but, upon the other hand, neither the Patent Tribunals nor the courts have authority to expand or amplify these provisions beyond their plain meaning naturally construed."

Appellant's brief states: "* * * As has already been pointed out, Disch's construction was specifically taught in his original disclosure, was thoroughly understood by the Examiner and was not in question before the Board. Any indefiniteness attributable to the original disclosure relates wholly and exclusively to the *use* for which the unit construction was adapted and intended, and it is respectfully submitted that it is the primary purpose of the reissue statute to permit amendments supplying such insufficiencies and correcting such defects. * * *"

If this were the only ambiguity in the disclosure of appellant's patent, we would agree that the additions to appellant's application would not constitute new matter.

We cannot, however, assent to the proposition above quoted from appellant's brief. We cannot regard a laminated counter to be inserted between the upper of a shoe and the lining thereof as the same article as a quarter of a shoe consisting of the outer part or upper of a shoe, the lining thereof, and a stiffener therebetween, and if it does not clearly appear in appellant's patent that he there sought to secure protection of the particular subject matter embraced in the specification and claims before us, the decision appealed from must be affirmed.

This brings us to a consideration of the disclosure of appellant's patent. It is the contention of appellant that the word "counter" in the shoe making art is used in two senses: 1, to indicate an entire quarter portion of an upper, and 2, to indicate an element which reinforces and stiffens the rear portion of the upper, and not the entire portion of the upper.

In this statement we are in agreement with appellant, and the examiner so held, but it is clear to us that the word "counter" was used in appellant's patent in the second sense above noted.

The first paragraph speaks of "counters or heel-stiffeners," evidently considering the two terms to be synonymous. The second paragraph describes the conventional prior art, and clearly intends the word "counter" to mean the stiffening element between the upper and the lining of a shoe. The same is true of the use of the word "counter" in the fourth paragraph, where it is used synonymously with the term "heel-stiffener." The patent further states that the "counter" is made of stiff leather or other suitable material. It is true that later in the patent the three elements described therein as a "counter unit" are also referred to as a "counter," but obviously this should be interpreted in view of the previous provisions of the specification as meaning "counter unit" and could not have been intended to include a "quarter" of a shoe unless the term "counter unit" also included it. This brings us to a consideration of the term "counter unit" as used in the patent. It is there stated that the counter unit consists of an outer cover, the counter,

and an inner lining, cemented and stitched together.

It is true that in the second paragraph of the patent, in describing the conventional prior art, there is found the phrase "the inner lining and outer cover portion of the shoe," and in appellant's structure one of the component parts of the counter unit is referred to as "the outer cover" and another component part is referred to as "the inner lining," but the words "of the shoe," used by appellant in describing the prior art, are nowhere found in describing these elements of his structure. The omission of the words "of the shoe" in relation to the terms "outer cover" and "inner lining" would be entirely consistent with the idea that the invention disclosed in the patent related wholly to a laminated counter between the outer cover and inner lining of a shoe, and we may not assume that the words "outer cover" and "inner lining" referred to the outer cover and inner lining of a shoe.

In appellant's brief, under the heading "The Original Disclosure," it is stated: "Under this heading we consider whether or not Disch's original disclosure is consistent with his actual invention of a shoe-quarter. * * *"

Assuming that the original disclosure in appellant's patent is consistent with the invention of a shoe-quarter, the insertion of the additions to the specification of the patent found in appellant's reissue application is not thereby warranted. A disclosure may be consistent with two or more inventions, but not clearly describe either as the law requires as a condition of reissue of a patent.

Appellant insists that the reissue application describes the same invention as is disclosed in his patent. The examiner expressed doubt upon this point. The Board of Appeals made no reference to it in its decision. We are unable to say, nor are we called upon to say, that the invention disclosed in the patent, if applied to a laminated counter between the upper of a shoe and the lining thereof, is the same invention as is embraced in the claims before us, considered in connection with the paragraphs in appellant's reissue application not contained in appellant's patent; but, like the examiner, we have doubt upon this point.

After a careful examination of the disclosure of appellant's patent, we are un-

able to say that the "counter unit" there-in described includes any portion of the outer cover of a shoe, or of the inner lin-ing thereof.

We are in agreement with the Patent Office tribunals that appellant's ap-plication contains new matter not warrant-ed by the disclosure of appellant's patent.

For the reasons hereinbefore stated, the decision of the Board of Appeals is af-firmed.

Affirmed.