**Application of Bernard F. HAY.**

**Patent Appeal Nos. 76–558, 76–559.**

United States Court of Customs and Patent Appeals.

May 20, 1976.

---

**918**

Donald H. Zarley, Michael G. Voorhees, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

These appeals, consolidated for argument and decision, are from decisions of the Patent and Trademark Office Board of Appeals affirming the final rejection of the single claim in each of appellant's reissue applications.[1] We affirm.

The invention, as indicated by the application titles, relates to an electrical resistor (Appeal No. 76–559) and a method of making it (Appeal No. 76–558), in which the resistor element is embedded in an insulating plastic within a housing by forcing fluid plastic into the housing under pressure. A detailed description of the invention is not necessary to an understanding of these cases.

Appellant's desire to have his patents reissued stems from a judgment in an infringement suit holding the original patents invalid for failure to comply with 35 U.S.C. § 112, first paragraph.[2] *Dale Electronics, Inc. v. R. C. L. Electronics, Inc.*, 356 F.Supp. 1117, 178 U.S.P.Q. 262 (D.N.H.), *affirmed*, 488 F.2d 382, 180 USPQ 225 (CA 1 1973). The district court found that appellant's patents did not disclose the only plastic he had found would work, Rogers RX 600, and that only persons skilled in the plastics molding art (not the electrical resistor art to which the court found the invention pertained) could determine what plastics within the general categories disclosed by appellant would produce the desired results, and even that only after experimentation. 356 F.Supp. at 1125–26, 178 USPQ at 267–68. The court of appeals characterized this holding as based on the "best mode" requirement of § 112. 488 F.2d at 388–89, 180 USPQ at 229–30. Appellant filed his reissue applications after the district court

---

1. No. 76–558 concerns application serial No. 348,149, filed April 5, 1973, entitled "Electrical Resistor and Method of Making Same," for the reissue of Patent No. 3,201,855, issued August 24, 1965. No. 76–559 concerns application serial No. 348,260, filed April 5, 1973, entitled "Electrical Resistor," for the reissue of Patent No. 3,206,704, issued September 14, 1965.

2. § 112. *Specification*

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

decision for the purpose of adding the following sentence to each specification:

> An example of a preferred molding compound is a phenolic compound reinforced with glass fibers which is manufactured by Rogers Corporation, Rogers, Connecticut, under the product designation RX 600.

The application involved in Appeal No. 76–559 was later amended to describe RX 600 further. The examiner rejected the applications under 35 U.S.C. § 251, first paragraph, last sentence, on the ground that the quoted insertion was "new matter."[3] The board affirmed the rejection in each case, holding that the insertions were more than mere clarification of matter already disclosed in the patents and that the erroneous failure to disclose the matter originally was not manifest to those skilled in the art or caused by drafting errors or the unfamiliarity of the inventor with official forms, citing *In re Oda*, 443 F.2d 1200, 58 CCPA 1353, 170 USPQ 268 (1971). A separate rejection of the claim on appeal in No. 76–558 under 35 U.S.C. § 112 was also affirmed by the board, but it is not necessary to discuss it.

## OPINION

■ Regardless of whether the patents were held invalid for lack of enabling disclosure, as appellant contends, or for failure to disclose the best mode, we agree with the new matter rejections under § 251. We recognize that the reissue provisions of the Patent Act should be construed liberally in light of their remedial purpose (*Fontijn v. Okamoto*, 518 F.2d 610, 186 USPQ 97 (CCPA 1975); *In re Oda*, supra), but this liberality has never been construed to permit insertion of new matter in contravention of the § 251 proscription thereof. As P. J. Federico remarked in his *Commentary on the New Patent Act*, 35 USCA at 44,

In the old statute one of the grounds of reissue was stated to be "a defective or insufficient specification" whereas the expression in the new statute is "a defective specification or drawing," but the room for correction here is not very great since new matter cannot be introduced. See *In re Disch*, 112 F.2d 794, 798, 27 CCPA 1321, 1326, 46 USPQ 62, 66 (1940). The new matter provision of § 251 is thus a limit on the correction of errors, even where those errors were made in good faith as appellant argues was the case.

We discussed the new matter provision of § 251 at great length in *In re Oda*, supra, and see no need to repeat that discussion here, except to emphasize that the term "new matter" presumably has the same meaning in § 251 as it does in the last sentence of 35 U.S.C. § 132, which prohibits introducing "new matter" into the disclosure of the invention by amendment.

In these cases the invention was not properly disclosed in either patent, and the insertions proposed by appellant are necessary, as appellant effectively admits in the reissue oaths, to bring the disclosures into compliance with § 112. This is not a case in which the specification may be properly amended to disclose functions, properties, theories, or advantages inherent in what was originally disclosed. See *In re Smythe*, 480 F.2d 1376, 178 USPQ 279 (CCPA 1973). Nor is this a case like *In re Oda*, supra, in which the error in disclosure sought to be corrected was found to be manifest to those skilled in the art. The whole point of the determination of invalidity by the district court and the court of appeals was that the original disclosures were deficient in a way *not* apparent, whether explicitly, implicitly, or inherently, to those skilled in the pertinent art. That appellant may *now* know of plastics that work other than RX 600 does

**3.** § 251. *Reissue of defective patents*

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

not make his original disclosures any less fatally defective. The cases relied on by appellant, e. g., *Miller v. Bridgeport Brass Co.*, 104 U.S. 350, 26 L.Ed. 783 (1881), and *Triax Co. v. Hartman Metal Fabricators, Inc.*, 479 F.2d 951, 178 'USPQ 142 (CA 2, 1973), are distinguishable because in each case the reissue corrected or clarified matter which had *already* been disclosed but in a defective fashion. Here appellant admitted before the district court that he had not originally complied with the best mode requirement of § 112.[4] Where a patent is fatally defective, e. g., invalid for inadequate disclosure, such a defect cannot be cured by reissue seeking to put into the specification something required to be there when the patent application was originally filed. See *In re Nelson*, 280 F.2d 172, 187–88, 47 CCPA 1031, 1053, 126 USPQ 242, 256 (1960).

The decisions of the board are *affirmed.*

*AFFIRMED.*

---

4. 488 F.2d at 388 n. 12, 180 USPQ at 229 n. 12:

Q. But, at the time you filed this application, you had in mind a specific material that did work very well, did you not?
A. Yes.
Q. What was that material?
A. Rogers RX 600.
Q. And that was the best mode that you contemplated in carrying out this invention at that time?

A. I don't understand what you mean.
Q. Is that the best way you could think of carrying out your invention with Rogers RX 600?
A. Yes.
Q. Did you set it forth in your patent?
A. No.