**In re Elmar W. WEILER and Richard L. Mansell.**

**Appeal No. 85–2085.**

United States Court of Appeals, Federal Circuit.

May 8, 1986.

**3.** The relevant parts of Grids 202.01, 202.02 and 202.03 are as follows:

| Rule | Age | Education | Previous work experience | Decision |
|---|---|---|---|---|
| 202.01 | Advanced age | Limited or less | Unskilled or none | Disabled. |
| 202.02 | do | do | Unskilled or semiskilled-skills not transferable | Do. |
| 202.03 | do | do | Skilled or semiskilled-skills transferable. | Not disabled. |

William D. Stokes, Alexandria, Va., argued for appellants.

Richard E. Schafer, Associate Sol., U.S. Patent and Trademark Office, Arlington, Va., argued for appellee. With him on brief were Joseph F. Nakamura, Sol., and Fred E. McKelvey, Deputy Sol.

Before MARKEY, Chief Judge, and DAVIS and BISSELL, Circuit Judges.

MARKEY, Chief Judge.

Weiler and Mansell (Weiler) appeal from a decision of the United States Patent and Trademark Office Board of Appeals (board), App. No. 600–54 (Dec. 31, 1984), affirming the examiner's rejection of claims 13 and 19 in a reissue application filed under 35 U.S.C. § 251 (1982). We affirm.

## *Background*

Weiler filed an application on May 8, 1980, containing 11 claims. During prosecution, the examiner held that the application contained "three independent and distinct inventions" and required restriction between Claims 1–7 (assay method), Claims 8 and 11 (an "organic compound" in class 260/343.42), and Claims 9 and 10 (a "protein compound" in class 260/121). Weiler elected to prosecute Claims 1–7. Those claims were allowed without amendment, and the application issued on December 15, 1981 as U.S. Patent No. 4,305,923 ('923 patent) for a "Method for Quantitative Analysis for Limonin".

### *1. U.S. Patent No. 4,305,923*

The seven claims of the patent are independent claim 1 and dependent claims 2–7. Claim 1 reads:

1. A method for quantitative analysis of limonin which comprises reacting a known amount of limonin-specific antibodies, with a mixture of a known volume of sample containing an unknown amount of limonin and a known amount of a limonin-derivative labeled with an enzyme or with a radioactive isotope, determining the amount of labeled limonin-derivative which has reacted with said antibodies and calculating therefrom the unknown amount of limonin in said sample.

### *2. The Reissue Application*

Weiler did not contest the examiner's requirement for restriction and did not file a divisional application, to assert the non-elected claims or any other claims.

On August 18, 1982, Weiler filed application Serial No. 408,497 to reissue the '923 patent. In his Declaration, Weiler said the '923 patent was partly inoperative or invalid by reason of his having claimed less than he had a right to claim, and that that deficiency "exists because of errors which were made without deceptive intent on my part."

Weiler alleged "an extraordinary sequence of events which preceded and followed the inadvertent abandonment of original claims 8–11" which made him aware that the invention of the '923 patent was not adequately claimed. His Declaration set forth: (1) a June 23, 1981 letter from patent attorney Earl Tyner to Manzell (co-inventor of the '923 invention) confirming Manzell's authorization to file a divisional application on claims 8–11; (2) Tyner's July 2, 1981 letter to Bryan Burgess (Office of General Counsel, University of Florida), about filing a divisional application; and (3) a January 19, 1982 letter to Mansell from Arthur Yeager, a partner in Tyner's firm, stating that a divisional application had not been filed.

The Declaration further stated that "on being made aware of the failure to timely file the divisional application," Mansell consulted with patent attorney William D. Stokes (counsel of record here), who drafted a set of claims which, he said in the Declaration, "should have been made in the original application."

### *3. The Reissue Claims*

The reissue application contained 20 claims. Claim 13 reads:

13. A method for developing citrus fruit strains low in limonin content, which method comprises identifying by the use of limonin-specific antibodies as a analytical reagent the limonin-low mutants in a breeding or cell culture program, and propagating said mutants.

Claim 19 reads:

19. A gamma gobulin fraction comprising antibodies reactive with limonin, said antibodies being formed consequent

to injecting into an animal a limonin-protein conjugate.

Claims 1–12 and 20 were allowed by the examiner. Claim 2 was cancelled by Weiler. Claims 13–19 were rejected, and that rejection was appealed to the board.

### 4. The Board's Action

The board agreed with the examiner's view that "failure to timely file a divisional application including non-elected claims is a deliberate act and not error in the prosecution of the original patent" (citing *In re Orita*, 550 F.2d 1277, 193 USPQ 145 (CCPA 1977)). It sustained the rejection of claims 14–18 on that ground, i.e., because they are "directed to the same subject matter as the non-elected conjugate claims 9 and 10" of the original application. Claims 14–18 are not before us on appeal.

The board sustained the rejection of claims 13 and 19 on this specific ground:

Appeal claims 13 and 19 are directed to subject matter not claimed at all in the original application. As to them, the Examiner's reliance on the case of In re Rowand et al. is entirely correct and that decision is controlling. Here, as in that case, "there is nothing in the original patent evidencing that appellants intended to claim (this now claimed subject matter)" (526 F.2d 558, 560, 187 USPQ 487 at 489).

### Issue

Whether the board erred in sustaining the rejection of claims 13 and 19.

### OPINION

#### Introduction

■ The starting place is the statute itself, 35 U.S.C. § 251:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

In enacting the statute, Congress provided a statutory basis for correction of "error". The statute is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally. *In re Bennett*, 766 F.2d 524, 528, 226 USPQ 413, 416 (Fed.Cir.1985) (in banc); *Ball Corp. v. United States*, 729 F.2d 1429, 1439 n. 28, 221 USPQ 289, 296 n. 28 (Fed. Cir.1984); *In re Hay*, 534 F.2d 917, 919, 189 USPQ 790, 791 (CCPA 1976). Nonetheless, not every event or circumstance that might be labeled "error" is correctable by reissue.

### A. The Parties' Contentions

Weiler says the subject matter of neither claim 13 nor claim 19 constitutes "an independent and distinct invention" from that secured by the original patent, because both subject matters constituted part of the invention which was intended or sought to be secured by the original patent.

Pointing to the letters about a divisional application, on other claims, Weiler says his failure to claim the subject matter of claims 13 and 19 was not deliberate or purposeful, but was caused by the prosecuting attorney's error. He says that "but for the inventors' ignorance of patent drafting technique, their lack of knowledge of claiming technique, and their attorney's obvious lack of understanding of the invention, the subject matter of the part of the invention covered by claims 13 and 19 would have been included in the original patent."

The Solicitor's brief concedes that some minimal support for claims 13 and 19 appears in the patent's specification, but argues that "mere disclosure of this subject matter does not demonstrate an intent to

claim this subject matter." The Solicitor's brief also argues that "if a mistake was made [in not filing a divisional application], it is not the type of mistake which can be corrected by reissue," citing *In re Orita,* 550 F.2d 1277, 1281, 193 USPQ 145, 149 (CCPA 1977).[1]

## B. The Board's Opinion

In its opinion, the board said, as above indicated, that the subject matter of claims 13 and 19 "was not *claimed at all* in the original application" (emphasis added), and that nothing in the patent evidenced an "intent to claim" that subject matter, citing *In re Rowand,* 526 F.2d 558, 560, 187 USPQ 487, 489 (CCPA 1975), as controlling authority.

■ This court reviews decisions, not the mere language of an opinion. When that language indicates an erroneous basis for the decision, the decision will be reversed, but that is not the case here. The board's language, while infelicitous, simply meant that Weiler's failure to have ever claimed, broadly or narrowly or otherwise, the subject matter of claims 13 and 19, and his failure to show an "intent to claim" that subject matter, indicated absence of the statutorily required "error."

The board's language reflected its well founded recognition that Weiler was seeking to claim subject matter entirely distinct from anything anywhere earlier claimed or attempted or intended to be claimed, and was not seeking to obtain a broadened or narrowed claim to subject matter claimed in the patent proffered for surrender. In dealing with that more common circumstance, one of our predecessor courts said "the whole purpose of the [reissue] statute, so far as claims are concerned, is to permit limitations to be added to claims that are too broad or to be taken from claims that are too narrow." *In re Handel,* 312 F.2d 943, 948, 136 USPQ 460, 464 (CCPA 1963).

## C. Disclosure

Weiler argues, on the basis of loose language which, taken out of context, would appear to say that one looks only to see whether the subject matter of a reissue claim appears in the disclosure, and, if it does, a reissue applicant must be granted allowance of that claim. *See* D. Chisum, Patents, § 15.03[3] at 15–53 (1985); I. Kayton, Kayton on Patents, § 22–64 (1985). But the question of support in the disclosure is a § 112 inquiry. If there be no such support, the inquiry ends there, and reissue cannot be obtained. Thus, all consideration of § 251 must await that threshold § 112 determination. In the present case, as above indicated, there is some minimal support for the subject matter of claims 13 and 19.

■ When, unlike the present case, a reissue applicant seeks to obtain a broadened version of a claim in the patent, one may look to see whether the disclosure "reasonably conveys to one skilled in the art that the inventor had possession of the broad invention at the time the original application was filed." *In re Peters,* 723 F.2d 891, 894, 221 USPQ 952, 954 (Fed.Cir. 1984). That language speaks to the reason why the inventor failed to claim more broadly an invention he had claimed in the patent. It does not speak to the present case, in which Weiler did not claim the subject matter of the reissue claims "at all," to use the board's phrase. The language referring to the "disclosure" in *Peters,* and in other cases dealing with reissue, is directed ultimately to the question of error. One cannot assert error in failing to claim that which was not disclosed at all, or that which was not so disclosed as to indicate that the inventor was possessed of the invention as it is being claimed in the reissue application.

Weiler's argument that the subject matter of claims 13 and 19 does not constitute "an independent and distinct invention"

1. Because the rejection of claims 14–18 is not appealed, the parties' discussion of the reasons why Weiler failed to file divisional applications on the subject matter of those claims, Weiler's evidence consisting of letters about divisional applications on non-elected claims 8–11, and the Solicitor's reliance on *Orita,* are irrelevant.

merely because that subject matter can be found somewhere in the overall disclosure of the '923 patent is meaningless. As above indicated, the subject matter must have been disclosed, § 112, or there is no basis for discussing whether the invention being claimed on reissue is independent or distinct. Moreover, § 251 authorizes reissue for "the" invention disclosed in the original patent, not for just "any" and "every" invention for which one may find some support in the disclosure of the original patent.

The subject matter of claims 13 and 19 are clearly independent of and distinct from each other, from that of elected claims 1–7, from that of non-elected organic compound claims 8 and 11, and from that of non-elected protein compound claims 9 and 10. Weiler would thus have had no right to insert and present claims 13 and 19 in the original application after the examiner's requirement for restriction.

Here too, the question redounds to one of error, for when an applicant makes some disclosure, as Weiler did, of as many as five distinct inventions, claims one, and ignores the rest, it is difficult to find error in the failure to claim those ignored on the sole basis that they were disclosed. To so hold would render meaningless the statutory requirement that an applicant point out and distinctly claim subject matter he regards as his invention. 35 U.S.C. § 112, 2d ¶.[2]

### D. "Intent to Claim"

■ Language appearing first in the opinion in *U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp.*, 315 U.S. 668, 676, 62 S.Ct. 839, 843, 86 L.Ed. 1105, 53 USPQ 6, 9–10 (1942), has been picked up and has metamorphosed into a requirement that an applicant show his original "intent to claim" the subject matter of the reissue claim sought. The phrase "intent to claim" does not appear in the statute. It is but judicial shorthand, signifying a means of measuring whether the statutorily required *error* is present. Clearly, a showing that an applicant had an intent to claim matter he did not claim can go a long way to support a finding that error occurred; and, conversely, a showing that an applicant never had any such intent makes a finding of error extremely difficult if not impossible.

■ References to "intent to claim" in our cases, though occasionally including § 112 considerations, resolve ultimately into the question of error. "Determining what protection [an inventor] intended to secure by [an] original patent for the purposes of § 251 is an essentially factual inquiry confined to the *objective* intent manifested by the original patent." *In re Rowand*, 526 F.2d 558, 560, 187 USPQ 487, 489 (CCPA 1975) (emphasis in original). As explained in a later decision, *Rowand's* test of "intent to claim" was not one of "intent" per se, but looked to "objective indicia of intent." *In re Mead*, 581 F.2d 251, 256, 198 USPQ 412, 417 (CCPA 1978). The court in *Mead* analogized that evidence of "intent" to the written description requirement of § 112, first paragraph, i.e., "a written description of the invention, and of the manner and process of making and using it." *See also In re Peters*, 723 F.2d 891, 894, 221 USPQ 952, 954 (Fed.Cir.1984). It is true that absence of compliance with § 112 will foreclose a finding of "intent" and preclude grant of the reissue, but, as indicated above, that absence dooms the application in any event. The converse is not true. Compliance with § 112 does not alone establish "intent to claim" and does

---

**2.** I. Kayton, Kayton on Patents, § 22–64 (1985) ("the predecessor to our present statute required that a reissue application be for 'the *same* invention' rather than for 'the *invention disclosed*' in the original patent ... Now it is only necessary to compare the reissue *claims* with the disclosure in the parent patent for the purpose of determining whether they are supported as required by 35 USC § 112" (emphasis in original)). As indicated in the text, compliance with § 112 is a threshold consideration, but such compliance does not establish error in a failure to claim every invention disclosed.

not alone establish error in a failure to claim.[3]

This court has recently moved the "intent to claim" approach toward closer conformity with the statute, describing it as merely one factor "that sheds light upon whether the claims of the reissue application are directed to the same invention as the original patent *and the reissue would correct an inadvertent error in the original patent.*" *In re Hounsfield*, 699 F.2d 1320, 1323, 216 USPQ 1045, 1048 (Fed. Cir.1982) (emphasis added).

### E. "Error"

 Thus, we arrive at the central question in this appeal, which is not whether there is disclosure, but whether Weiler has established "error" which can be remedied by reissue. The reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute *de novo* his original application.

The language of *U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp.*, 315 U.S. at 676, 62 S.Ct. at 843, 53 USPQ at 9–10, is relevant here:

> [I]t is not enough that an invention *might have been claimed* in the original patent because it was suggested or indicated in the specification. It must appear from the face of the instrument that what is covered by the reissue was intended to have been *covered* and *secured* by the original. [Emphasis added.]

Weiler and the Solicitor argue as though the "error" to be corrected by reissue were a subjective error. It is not. We do not here deal with "deceptive intention".

Though the term "error" is to be interpreted liberally, *In re Wesseler*, 367 F.2d 838, 84, 152 USPQ at 339, 348 (CCPA 1966), Congress did not intend to alter the test of "inadvertence, accident, or mistake" estab-

lished in relation to the pre-1952 statutes. *In re Wadlinger*, 496 F.2d 1200, 1207, 181 USPQ 826, 831 (CCPA 1974). *See In re Mead*, 581 F.2d 251, 257, 198 USPQ 412, 418 (CCPA 1978) ("conscious choice" not to file continuing application not "error"); *In re Clark*, 522 F.2d 623, 626, 187 USPQ 209, 212 (CCPA 1975) (dereliction in duty of candor not "error"); *In re Byers*, 230 F.2d 451, 454, 109 USPQ 53 (CCPA 1956) (deliberate amendment of claim not "error"). *See also In re Petrow*, 402 F.2d 485, 159 USPQ 449 (CCPA 1968) (cancellation of claim in original application was "error"); *In re Willingham*, 282 F.2d 353, 127 USPQ 211 (CCPA 1960) (cancellation of claim was "error").

As above indicated, the discussions in the briefs concerning the failure to assert the non-elected claims in a divisional application are irrelevant. Those claims are not on appeal and were drawn to subject matter distinct from that of claims 13 and 19. Though Weiler *might have* filed a divisional application containing claims 13 and 19, there is nothing of record remotely indicating that Weiler or his counsel or anyone else ever thought of doing so, or ever intended doing so, or failed to do so only through error.

 Significantly, Weiler accepted issuance of the '923 patent with its claims to a single elected invention. By acquiescing in the examiner's restriction requirement, and failing to file divisional applications on the subject matter of non-elected claims, Weiler foreclosed (because that was not error) his right to claim that subject matter. If it were not error to forego divisional applications on subject matter to which claims had been made in the original application, it cannot on the present record have been error to forego divisional applications on subject matter to which claims had never been made. Nor has Weiler made any

---

**3.** One commentator has recently stated: "The intent test and the *U.S. Industrial Chemicals* statement [see text *infra* ] are perhaps best understood as expressions of the 'description of the invention' requirement, which the Court of Customs and Patent Appeals recognizes as distinct from the enablement requirement." D.

Chisum, Patents, § 15.03[3] at 15–53 (1985). The commentator could not have meant that compliance with § 112's enablement requirement is sufficient in itself to warrant an automatic finding of "intent" and a resulting reissue, in disregard of § 251's requirement to show *error.*

showing on which error could be found as the cause of his failure to claim the subject matter of claims 13 and 19.[4]

The board's notation that the subject matter of claims 13 and 19 was "not claimed at all" in the original application, and its finding that nothing in the original patent evidences Weiler's "intent to claim" that subject matter, reflect non-statutory language used by courts and others to support and convey the concept that an inventor's failure to claim particular subject matter was not the result of the "error" required by § 251. Having made that notation and finding, the board should have stated the resulting basis (no error) for its decision. That it did not do so does not require reversal in this case, in which the record clearly supports the notation and finding, Weiler has not shown that either was clearly erroneous, and Weiler has shown nothing in the record that would have required the board to determine that his failure to claim the subject matter of claims 13 and 19 was the result of error.

AFFIRMED.

---

4. Weiler's reliance on allegations of the inventors' ignorance of drafting and claiming technique and counsel's ignorance of the invention is unavailing. Those allegations could be frequently made, and, if accepted as establishing error, would require the grant of reissues on anything and everything mentioned in a disclosure. Weiler supplies no facts indicating how the ignorance relied on caused any error as the basis of his failure to claim the subject matter of claims 13 and 19. As indicated in the text § 251 does not authorize a patentee to re-present his application. Insight resulting from hindsight on the part of new counsel does not, in every case, establish error.