# United States Court of Appeals for the Federal Circuit

06-1242
(Serial No. 10/134,550)

IN RE ARNOLD B. SERENKIN

John E. Nathan, Paul, Weiss, Rifkind, Wharton & Garrison LLP, of New York, New York, argued for appellant. With him on the brief was Jeffrey H. Ingerman and John R. Lane, Ropes & Gray LLP, of New York, New York. Of counsel was Gongjun Ji.

Heather F. Auyang, Associate Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for appellee. With her on the brief were John M. Whealan, Solicitor and Thomas W. Krause, Associate Solicitors.

Appealed from: United States Board of Patent Appeals and Interferences, Patent and Trademark Office.

# United States Court of Appeals for the Federal Circuit

06-1242
(Serial No. 10/134,550)

IN RE ARNOLD B. SERENKIN

_____

DECIDED:  March 6, 2007
_____

Before LOURIE, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Arnold B. Serenkin ("Serenkin") appeals from the final decision of the United States Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("Board") sustaining the examiner's rejection of claims 1 to 11 of Reissue Application No. 10/134,550 ("the '550 reissue application").  Because the Board correctly determined that the error upon which Serenkin bases his reissue application is not correctable error under 35 U.S.C. § 251, we affirm.

## BACKGROUND

On January 29, 1997, Serenkin filed U.S. Provisional Patent Application No. 60/036,649 ("the '649 provisional application") in the PTO.  That application, entitled "Apparatus and Method for Uniformly Discharging Bulk Solid Material from Overhead

Drag Type Conveyors," relates to an improvement on a type of mechanical conveyor. The application consisted of five pages and eight figures. Some of the figures included multiple illustrations.

On January 28, 1998, one day less than a year after the filing of the '649 provisional application, Serenkin, through his counsel, submitted an application to the PTO in its capacity as the United States Receiving Office ("USRO") under the Patent Cooperation Treaty ("the PCT application"). The PCT application claimed priority from the '649 provisional application. Although the request form indicated that eight pages of drawings accompanied the application, and the PCT application referenced the eight figures in the specification, no drawings were included with the application. The USRO sent a postcard to Serenkin notifying him of the receipt of the application and the missing drawings.

On February 17, 1998, Serenkin submitted eight sheets of drawings to the USRO. On February 26, 1998, the USRO sent a formal notice entitled "Notification of Non-inclusion of Drawings with the International Application," indicating that the drawings were missing from the original filing and providing Serenkin with the choice of either submitting the drawings and receiving a new international filing date, or proceeding without the drawings and retaining the original filing date. In the event Serenkin chose the latter, the USRO informed him that "any reference in the international application to these drawings will be considered non-existent" and "will not be taken into account for the purposes of the international processing."

The USRO issued a Petition Decision on March 24, 1998, stating that pursuant to PCT Rule 20.2(a) and PCT Administrative Instructions, sections 309(b) and 310, "the

06-1242                                    2

filing date of an international application is the date when all the papers completing the international application are received." Thus, the office stated that the drawings could not be treated as having been submitted on the original filing date. The USRO again informed Serenkin that he must decide within fifteen days whether he preferred to retain the original filing date of January 28, 1998, with the application as filed without drawings, or incorporate the drawings as part of the application and accept a new filing date of February 17, 1998. If Serenkin chose the latter, the USRO specifically stated that the priority date of January 29, 1997 would be lost.

On March 31, 1998, Serenkin's attorney filed a petition to the USRO accepting the February 17, 1998 filing date. By letter dated August 19, 1998, the attorney again informed the USRO that Serenkin wished to include the drawings in the application and that the revised filing date was acceptable. Notably, the attorney requested that the World Intellectual Property Organization "republish th[e] application showing a filing date of 17 February 1998 with no priority claim and the eight sheets of drawings filed on 17 February 1998." On September 10, 1998, the USRO confirmed that the drawings were received, and the application was accorded an international filing date of February 17, 1998.

On August 21, 1998, Serenkin's attorney filed a request to commence the United States national phase of the PCT application. The national stage application was assigned Application No. 09/125,736 ("the '736 application"). The request was accompanied by a preliminary amendment that deleted the following sentence that appeared in the original application: "This application claims the benefit of U.S. Provisional Patent Application No. 60/036,649, filed January 29, 1997." The sentence

was replaced with: "This is the national phase of International Application No. PCT/US98/01446 filed February 17, 1998." Serenkin filed his inventor's declaration on December 9, 1998, which became the filing date of the application. On August 29, 2000, the '736 application issued as U.S. Patent 6,109,425 ("the '425 patent").

On April 30, 2002, Serenkin, through new counsel, sought reissue of the '425 patent, seeking to obtain the benefit of the January 29, 1997, filing date for the '649 provisional application. The examiner issued a final rejection of the reissue application on November 4, 2002, concluding that "the error which is relied upon to support the reissue application is not an error upon which a reissue can be based." Serenkin also filed a petition under 37 C.F.R. §§ 1.181 and 1.182 for retroactive award of an earlier international filing date in the Office of the PCT Legal Administrator. That petition was dismissed on February 6, 2003.

Serenkin appealed the examiner's rejection to the Board on May 1, 2003. The Board sustained the rejection, noting that under the PCT and applicable U.S. statutes, Serenkin failed to perfect his claim for priority from the provisional application. The Board concluded that the PCT application had been properly accorded an international filing date of February 17, 1998. Moreover, the Board determined that Serenkin failed to obtain the benefit of the earlier filing date, not because of inadvertence, accident, or mistake, which are correctable by reissue under § 251, but because of a deliberate choice, which it construed as an error of judgment.

Serenkin timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

Whether an applicant satisfies the statutory requirements of 35 U.S.C. § 251 is a question of law that we review de novo. In re Clement, 131 F.3d 1464, 1468 (Fed. Cir. 1997). We review the Board's underlying factual findings for substantial evidence. In re Roemer, 258 F.3d 1303, 1307 (Fed. Cir. 2001).

On appeal, Serenkin argues that the Board erred in determining that reissue is not an available remedy for what he argues is "error" in this case. Serenkin asserts that his attorney simply made the wrong procedural choice during prosecution of the PCT application. In hindsight fashion, Serenkin argues that the attorney should have accepted the January 28, 1998 filing date without the drawings, and added the drawings at some later point, arguing that they would not have introduced new matter. Under such circumstances, Serenkin asserts that he would have been able to claim priority from the '649 provisional application. While admitting that the relief he seeks is not available under PCT procedures, Serenkin argues that such a procedural mistake is remediable under § 251, particularly in light of our case law authorizing the use of reissue to correct prosecution mistakes. Moreover, Serenkin contends that the Board improperly relied on recapture cases, which are inapplicable here, in concluding that errors of judgment are not correctable under § 251.

The Director of the PTO responds that the Board correctly concluded that reissue is not an available remedy in this case. The Director asserts that Serenkin made a deliberate choice to forgo the earlier filing date in exchange for inclusion of the drawings in his PCT application. Such a deliberate choice, according to the Director, is not the type of error correctable under § 251. Additionally, the Director contends that under the

provisions of the PCT agreement and the United States patent laws, the '425 patent was properly accorded an international filing date of February 17, 1998. Thus, the Director asserts that requiring the PTO to change the priority date of the '425 patent would result in a violation of the treaty agreement.

We agree with the Director that the Board properly concluded that it is not permissible for Serenkin to claim the benefit of the earlier filing date through the reissue process. Section 251, which governs reissue of defective patents, provides in pertinent part that:

> Whenever any patent is, <u>through error</u> without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall . . . reissue the patent for the invention disclosed in the original patent . . . for the unexpired part of the term of the original patent.

35 U.S.C. § 251 (emphasis added). In deciding the instant appeal, we must determine whether the action of Serenkin's attorney, specifically, the act of choosing a later filing date during prosecution of the PCT application in exchange for inclusion of missing drawings, constitutes an "error" that is correctable under § 251. We conclude that it does not.

While we have acknowledged that § 251 is "based on fundamental principles of equity and fairness, and should be construed liberally," <u>In re Weiler</u>, 790 F.2d 1576, 1579 (Fed. Cir. 1986), we have also stated that the remedial function of the statute is not without limits. <u>MBO Labs., Inc. v. Becton, Dickinson & Co.</u>, 474 F.3d 1323 (Fed. Cir. 2007). Indeed, "[t]he reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute de novo his original application." <u>Weiler</u>, 790 F.2d at 1582. Thus, "not every

event or circumstance that might be labeled 'error' is correctable by reissue." Id. at 1579.

Our case law holds that the deliberate action of an inventor or attorney during prosecution generally fails to qualify as a correctable error under § 251. Our predecessor court, the Court of Customs and Patent Appeals, so held in In re Mead, 581 F.2d 251 (CCPA 1978). In that case, the inventor's attorney made the deliberate choice of not filing a continuing application during the pendency of the parent application in order to cover subject matter that was disclosed, but not claimed, in the original application. Although he may have had the intention of filing a subsequent application to cover that subject matter within the applicable one-year statutory bar period, in the interim he discovered intervening prior art that was capable of defeating patentability of that subject matter unless he was able to claim priority from the parent application. The court held that the inventor could not rely on § 251 to correct that purported error. Notably, the court stated:

> When his attorney made the <u>conscious choice</u> of breaking appellant's chain of copendency by letting the application issue, with the plan to claim in the subsequent application, he knew, or should have known, that there could exist intervening references . . . which could defeat patentability of the disclosed but unclaimed subject matter in the original patent. That intentional omission of the appealed subject matter from the original application combined with the plan to claim it in the subsequent application, does not constitute "error" under § 251 because to permit appellant to use the reissue statute in this manner would defeat the purpose behind the copendency requirement of § 120 of the statute.

Id. at 257 (emphasis added).

Similarly, in In re Orita, 550 F.2d 1277 (CCPA 1977), the Court of Customs and Patent Appeals found that the reissue applicant failed to establish error under § 251. The Orita inventor filed two sets of claims—the first involving compound and process

claims, the second involving coating and emulsion claims—in one application. The examiner required restriction between the two sets of claims. The inventor's counsel elected the first set, and authorized the cancellation of the non-elected claims. The attorney, however, failed to subsequently file a timely divisional application covering the non-elected claims. The inventor then filed a reissue application, arguing that the failure to file a divisional application was a correctable error under § 251. The court disagreed, holding that the error did not cause "the original patent to be 'partially inoperative by reason of the patentee claiming less that he had a right to claim in the patent.'" Id. at 1280. The court noted that the inventor "acquiesced in the examiner's requirement for restriction," and therefore failed to establish a correctable error. Id. Moreover, the court reasoned that if the inventor prevailed, the copendency requirement would be rendered meaningless. Id. at 1280-81.

The instant case presents similar circumstances. Serenkin's attorney acquiesced to the PCT examiner's requirement of making a choice between the original international filing date and the drawings. He made a conscious decision to select the latter. Notably, unlike the attorney in Mead, the consequence of losing the January 28, 1998 filing date was not a fact discovered at some later point, but was an issue that was brought to the attention of Serenkin's attorney by the USRO at the time of his decision. Yet he proceeded to choose that option. Thus, this case is even less meritorious than Mead. Serenkin cannot now rely on the reissue statute, in light of a belated decision that he should have retained the original filing date, in order to undo the consequences of his attorney's deliberate choice. As the court articulated in Orita, to do so would

undermine the importance of the applicable rules set forth by our national patent laws and international patent treaties.

We reject Serenkin's assertion that the Board erred in light of prior case law wherein various courts found reissue to be an appropriate vehicle for perfecting priority claims to earlier applications. As a preliminary matter, we note that the present case, in essence, is not about the failure of an applicant to perfect a claim for priority. The applicant was fully alert to the benefits of claiming priority. To characterize this case more accurately, it is about an applicant who intentionally and knowingly surrendered his right to a claim of priority, in exchange for a benefit, and now is unhappy with his choice. We find that to be a significant distinction over the cases cited by Serenkin.

Moreover, although the courts in those cases held that reissue could be used to perfect a claim for priority, none involved a situation where an attorney made a deliberate decision to forgo any right to a priority claim in exchange for the benefit of including newly submitted drawings or other material in his application. See Brenner v. State of Israel, 400 F.2d 789 (D.C. Cir. 1968) (holding that reissue is appropriate when an attorney made a clerical error by failing to file a certified copy of the foreign application from which priority was claimed); see also Fontijn v. Okamoto, 518 F.2d 610 (CCPA 1975) (concluding that reissue is a proper mechanism for perfecting priority where patentee failed to notify PTO of earlier-filed copending applications during prosecution of original application); Sampson v. Comm'r, 195 USPQ 136 (D.D.C. 1976) (holding that reissue is appropriate to perfect priority claim where patentee substantially complied with the statutory requirements but inadvertently omitted the filing dates from prior applications). Instead, the errors in those cases were the result of inadvertence,

accident, or mistake, which clearly are appropriate bases for reissue.  Weiler, 790 F.2d at 1582 (citing In re Wadlinger, 496 F.2d 1200, 1207 (CCPA 1974)).  The distinction is between a genuine error, or mistake, and a deliberate, but subsequently found to be disadvantageous, choice.

Further, we are not persuaded by Serenkin's argument that the Board erred by relying on recapture cases in reaching his decision.  That argument fails to focus on the dispositive issue before us, viz., whether a remediable error occurred under § 251.  The cases relied upon by the Board are instructive in indicating the types of errors that are correctable through reissue, even though they arise out of circumstances not relating to priority claims.  See Wadlinger, 496 F.2d at 1207 (noting that errors arising from inadvertence, accident, or mistake are correctable under the reissue statute); see also In re Murray, 77 F.2d 651 (CCPA 1935) (stating that the reissue statute "was not enacted for the purpose of correcting errors of judgment").

Finally, we reject Serenkin's argument that reissue is appropriate in light of In re Wadlinger, wherein the Court of Customs and Patent Appeals concluded that error under § 251 may include "actions taken in full consciousness." 496 F.2d at 1207.  In dictum, the court stated that correctable errors can include "mistakes" which it defined as including "to choose wrongly."  According to Serenkin, because his attorney "chose wrongly" when confronted with the two options, that wrong choice is correctable by reissue.

We disagree with Serenkin's overly broad reading of Wadlinger.  In that case, the court was presented with the issue whether an applicant can use the reissue process to obtain claims that were narrower than claims that were previously cancelled by the

applicant. In deciding that question, the court first noted the well-established principle that "[t]he deliberate cancellation of a claim of an original application in order to secure a patent cannot ordinarily be said to be an 'error' and will in most cases prevent the applicant from obtaining the cancelled claim by reissue." Id. at 1206 (quoting In re Willingham, 282 F.2d 353, 357 (CCPA 1960)). The court then stated, however, that the extent to which the reissue statute prevents an applicant from obtaining claims that differ in form or substance from the cancelled claims "necessarily depends upon the facts in each case and particularly on the reasons for the cancellation." Id. After conducting a fact-intensive review of the record, the court determined that the reissue claims were different, specifically narrower in scope than the cancelled claims, and were thus permissible under § 251 because the original patent claimed less than it had a right to claim. The court so held, despite the fact that the cancellation of the original claims was deliberate.

Thus, the nature of the error asserted in Wadlinger differs greatly from the so-called error asserted here. Serenkin is not attempting to obtain claims that differ in scope from claims that he previously cancelled. Instead, he is attempting to use the reissue process to undo the consequences of his attorney's conscious decision to give up an earlier filing date so that certain material, which was considered important at the time, would be considered with his PCT application. He did not claim less than he had a right to claim. Because this case presents an entirely different set of circumstances, Wadlinger is thus distinguishable and fails to support Serenkin's position. As discussed above, the purported error asserted by Serenkin is not the type of error contemplated by

the reissue statute. We therefore hold that Serenkin may not rely on § 251 to perfect his claim for priority.

## CONCLUSION

We have considered Serenkin's remaining arguments and find them unpersuasive. Accordingly, we conclude that the Board did not err in sustaining the rejection of reissue claims 1 to 11 of the '550 reissue application in light of Serenkin's failure to establish a correctable error under § 251.

<u>AFFIRMED</u>.