cited by Yuba as a leading case adverse to the government's position.

The government's assertion that no taking can be found where the Corps of Engineers of the United States prohibited Yuba's exercise of its right to extract minerals, the Attorney General of the United States supported that action with an opinion, and the Secretary of the Army of the United States supported that action in refusing to approve a settlement, on the sole ground that Congress has not been shown to have authorized anything, is to say the least surprising. No basis is cited for what appears to be the novel proposition that all of those government officials were without authorization to assert what they believed were the rights of the United States, to announce an intent to enforce those rights, and to prohibit what they viewed as infringement of those rights. Nor has the government indicated that it has in any manner ordered such officials to seek Congressional authorization before taking such actions again. As the letters of record make plain, moreover, the United States initiated and continued its action here as part of its "Marysville project *as authorized by PL 89–789*" (emphasis added).

On the present record, therefore, it appears that the government, acting as it must through its authorized appropriate officials, prohibited Yuba's exercise of its right to dredge and to enjoy possession of the minerals thereby unearthed, and now resists payment of just compensation on the sole ground that it was careful to refrain from exercising its power of eminent domain, an act that would have unquestionably required it to pay the just compensation required by the Constitution. If upon the trial the record remains essentially unchanged, the scenario brings to mind the salutary view that, whatever the outcome, the United States wins when justice is done.

As above indicated, grounds cited by the United States in support of its motion were disregarded by the trial court. On appeal, the United States disregards three of those grounds (Election of Remedies, No Standing in Placer Service Corporation, and *Res Judicata*), even though Yuba treated them extensively in its opening brief. In the interest of judicial economy, we note our agreement with the trial court, and apparently with the government, that in this case those issues are appropriately and eminently worthy of disregard.

### CONCLUSION

 The grant of summary judgment where a trial would be fruitless and the moving party is clearly entitled to judgment as a matter of law serves an exemplary role in the judicial process. Because the remedy can be harsh in its finality, however, its application must be accompanied by great care in respect of the entire record and the relevant law. The basic fact issue, whether there was or was not a taking, having been determined on less than the entirety of a complete record, the grant was in this case error. Accordingly, the order dismissing the complaint on the government's motion must be vacated and the case remanded for trial.

VACATED AND REMANDED.

**In re Kenneth D. PETERS and Charles H. Anderson.**

**Appeal No. 83–903.**

United States Court of Appeals, Federal Circuit.

Dec. 21, 1983.

Lester L. Hallacher, Princeton, N.J., argued for appellant. With him on the brief were A. Russinoff and George E. Haas, Princeton, N.J., of counsel.

John W. Dewhirst, Arlington, Va., argued for appellee. With him on the brief was Joseph F. Nakamura, Silver Spring, Md.

Before MARKEY, Chief Judge, RICH and DAVIS, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a decision of the United States Patent and Trademark Office Board of Appeals (board) rejecting claims 1 through 14, all of the claims in application serial number 141,070 seeking reissue of patent 4,145,633, issued March 20, 1979, for "Modular Guided Beam Flat Display Device". We *reverse*.

## The Invention

The invention relates to improvements in structural elements of a flat panel television display device comprising an evacuated glass envelope having a front wall including a phosphor screen and a spaced substantially parallel back wall. The display device has a plurality of spaced parallel support walls extending perpendicularly between the front and back walls and forming a plurality of vertical parallel channels extending along the front and back walls. Each of the channels includes a beam guide structure composed of grid plates. Each support wall has a metal tip compressed between it and the front wall. The tip is disclosed as having a thickness at its base substantially equal to that of the support wall and tapering toward the front wall.

## The Application

Urging that the patent claims are unduly restricted because the tips "can be thin throughout and still support the envelope against atmospheric pressure and thus their dimensions and configuration are not critical", Peters and Anderson (Peters) sought to broaden the claims to render them readable on tapered and nontapered tips. For example, Peters sought to eliminate the bracketed limitation from claim 1, the only independent claim of the patent:

1. A display device comprising

an evacuated envelope having spaced, substantially parallel front and back walls and spaced, substantially parallel support walls extending between and substantially perpendicular to the front and back walls, said support walls forming a plurality of parallel channels extending along said front and back walls, a separable metal tip compressed between the front wall and each of said support walls and extending along the support wall, [each of said tips having a thickness at the support wall substantially equal to the thickness of the support wall and tapering to a thinner thickness at the front wall,] and means preventing movement of each of said tips in a direction transversely of the channels so as to

maintain the metal tips against the support walls.

### The Rejection

The examiner rejected all claims because of "a defective reissue oath" and obviousness under 35 U.S.C. § 103. The board reversed, but entered new grounds of rejection under 37 CFR § 1.196(b). The board rejected claims 1 through 14 on the ground that Peters failed to establish the error required by 35 U.S.C. § 251 to support the grant of a reissue patent containing broadened claims. It also rejected claims 1 through 12 and 14 under 35 U.S.C. § 112, first paragraph.[1] The basis for both rejections appears to have been the same, *i.e.,* that the claims are unsupported by Peters' original disclosure.

On reconsideration, the board agreed that the prior art "would appear to allow claims of the breadth presented"; but refused to allow the claims because such claims were not in its view supported by the disclosure. The board said "Appellants clearly intend the claims at bar to be readable on a subsequently discovered embodiment that is not remotely suggested by the original disclosure."

### Issue

The dispositive issue is whether the board erred in holding that the subject matter of claims 1 through 14 is not available to Peters because there is lack of support in Peters' original disclosure.

### OPINION

The board's rejections under § 112 and § 251 erroneously confined Peters to the specific embodiment disclosed in the original patent. *In re Rasmussen,* 650 F.2d 1212, 211 USPQ 323 (Cust. & Pat.App.1981):

"[T]hat a claim may be broader than the specific embodiment disclosed in a specification is in itself of no moment. Indeed,

the statutory provision for broadened claims in reissue applications is intended to meet precisely the situation in which a patentee has claimed 'less' than he had a right to claim. 35 U.S.C. § 251." 650 F.2d at 1215, 211 USPQ at 326.

As above indicated, we agree with the solicitor's statement that "In the present case, the Board's conclusion that appellants failed to establish the requisite error required by 35 U.S.C. § 251 is bottomed on its view that the broadened claims sought by the reissue application are not supported by the original patent disclosure". The case was briefed and argued on that premise. We therefore limit our discussion to the board's view that the original disclosure lacked support for the reissue claims and to our disagreement with that view. We do not agree that because the reissue claims would encompass differing tip shapes, each such tip shape must be disclosed and described in the original disclosure before Peters may be given the benefit of § 251.

Nor do we agree that the disclosed tip configuration was critical. No prior art was distinguished from and no rejection was overcome on the basis of the tip shape. Most importantly, one skilled in the art would readily understand that in practicing the invention it is unimportant whether the tips are tapered, and the board erred in determining the contrary.

There is, of course, much more to the claimed invention as a whole than the tips and no other element of the claimed invention is even related to the tapered shape of the tips. The board's reference to the last and retained element of the claim as related to the tip shape was an unwarranted effort to limit the claim. The broadened claims merely omit an unnecessary limitation that had restricted one element of the invention to the exact and non-critical shape disclosed in the original patent. In sum, nothing in the original disclosure indicates or suggests

---

1. 35 U.S.C. § 112, paragraph 1:
"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any

person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

that the tapered shape of the tips was essential or critical to either the operation or patentability of the invention. Indeed, if the reissue claims had been submitted with the original application, it is difficult to perceive how they could have been properly rejected under § 112.

Thus, the reissue claims are not drawn to new matter in the sense of § 251. The original patent states that it would be desirable for the tip ends to be as thin as possible to avoid optical interference, but that does not equate to a requirement that the tip bases be wider than the ends. What is important, says the patent, is that the tips withstand forces of atmospheric pressure loading. The teaching of the patent that metal tips permit a less thick support member than is possible with the glass support walls of the prior art is not affected by whether the metal tips are tapered.

Because the broadened claims sought by the reissue application are supported by the original patent disclosure, the board erred in rejecting the claims as being "based upon a disclosure that includes a written description that would not support or in any way indicate that Peters was previously in possession of the broad invention now asserted." As above indicated, that approach would be applicable to every broadened reissue (or original) claim which by definition would encompass an embodiment not specifically described in the specification. In the present case, the board having drawn the unsupported conclusion that the tapered shape of the metal tips was "critical", apparently felt that Peters must be restricted to claims containing a limitation specifying that shape. That was error, for where, as here, the overall disclosure reasonably conveys to one skilled in the art that the inventor had possession of the broad invention at the time the original application was filed, a claim drawn to that invention is available upon compliance with all provisions of § 251. *See In re Kaslow,* 707 F.2d 1366, 217 USPQ 1089 (Fed.Cir.1983).

Accordingly, the board's decision rejecting claims 1 through 14, is reversed.

REVERSED.