SEACHANGE INTERNATIONAL, INC., Plaintiff,

v.

NCUBE CORPORATION, Defendant.

nCUBE Corporation, Counter-claimant

v.

Seachange International, Inc., Counter-defendant

No. CIV.A.00–568–JJF.

United States District Court, D. Delaware.

April 7, 2004.

William J. Marsden, Jr. and J. Andrew Huffman, Fish & Richardson P.C., Wilmington, DE, Fish & Richardson P.C., Menlo Park, CA (Jack Slobodin, Karen I. Boyd, of counsel), Robert E. Hillman, Lawrence K. Kolodney and Steven R. Katz, Fish & Richardson P.C., Boston, MA, for Plaintiff SeaChange International, Inc.

Mary B. Graham and Rodger D. Smith, Morris Nichols Arsht & Tunnell, Wilmington, DE (James Pooley, Browning Marean, Gabriel Kralik, of counsel), Elizabeth Day

and L. Scott Oliver Gray Cary Ware & Freidenrich LLP, Palo Alto, CA, for Defendant nCUBE Corporation.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is a Motion for a New Trial pursuant to Federal Rule of Civil Procedure 59 (D.I.178) filed by Defendant nCUBE Corporation ("nCUBE"). The Motion was denied by Orders of the Court (D.I.203, 209) dated September 30, 2002, for the reasons discussed below.[1]

### I. BACKGROUND

Plaintiff, Sea Change International, Inc. ("SeaChange"), filed its Complaint on June 13, 2000, alleging that nCUBE infringed SeaChange's United States Patent No. 5,862,312 entitled "Loosely Coupled Mass Storage Computer Cluster" ("the '312 Patent").

SeaChange sought a preliminary injunction against nCUBE. On July 27, 2000, the Court conducted a hearing on the injunction motion. In response to the parties' joint representation that the subject matter of this lawsuit was of substantial importance, the Court suggested that the matter proceed to a full trial within ninety (90) days. Both parties agreed, and, on July 28, 2000, a Scheduling Order was issued that provided for a pretrial conference and claim construction hearing on August 24, 2000, and a trial to commence on September 18, 2000 (D.I.41). Based on the expedited trial schedule, the Court denied the motion for preliminary injunction. Additionally, the parties requested, and the Court granted, bifurcation of the issues of damages and willfulness for discovery

and trial until after the resolution of the infringement and validity issues. (D.I.54).

On August 29, 2000 the Court issued an Order construing the terms "interconnecting each one of said processor systems through a network for data communications with each other one of said processor systems" and "processor systems". (D.I. 103). Shortly thereafter, SeaChange moved for summary judgment on the infringement issues and nCUBE conceded infringement of Claims 37, 38, 40, 41, 42, 52, 53, 57, 58. As a result, only the validity issues remained for trial and they were tried to a jury from September 18th through September 22, 2000. During trial, nCUBE requested the Court to construe the preamble term, "distributed computer system", however, the Court declined this request. On September 25, 2000, the jury returned a verdict rejecting nCUBE's claims of invalidity.

nCUBE cites three grounds for its Motion for a New Trial. First, nCUBE contends that the Court should have construed the term "distributed computer system." nCUBE argues that the Court's declining to construe the term constituted prejudicial error warranting a new trial. Second, nCUBE contends that the Court's interpretation of the claim term "processor system" was erroneous and also warrants a new trial. Finally, nCUBE contends that a new trial is necessary because the verdict was against the great weight of the evidence.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(a) permits the granting of a new trial but does not specify the grounds that may

---

1. This Memorandum Opinion sets forth the Court's reasoning for the Orders dated September 30, 2002 (D.I.203, 209). The Court delayed issuing a Memorandum Opinion in this matter because it wanted to consistently resolve another related case involving the same parties in Civil Action No. 01–011–JJF and is issuing a Memorandum Opinion in that case contemporaneously.

support such a motion. Instead, the Rule permits the grant of a new trial for "any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The ground cited by nCUBE and available before the promulgation of the Rules is where prejudicial error has been committed during the trial. Federal Rule of Civil Procedure 61 advises that prejudicial error exists when it appears to the court that the error is "inconsistent with substantial justice." Fed.R.Civ.P. 61. With this standard in mind the Court will turn to a discussion of the errors claimed by nCUBE.

### III. *Claims of Error*

#### A. *The Court Declined a Request to Interpret the Term "Distributed Computer System"*

On page 4 of its Opening Brief nCUBE states: "[t]he preamble to claim 37 summarizes the invention as a 'distributed computer system.'" (D.I. 179 at 4). nCUBE requested at the pretrial conference and during trial that the Court construe the term. nCUBE contends the term "distributed computer system" was integral to the jury's ability to resolve nCUBE's invalidity claims against the '312 Patent. At the center of nCUBE's argument is the testimony of SeaChange's expert, Dr. Rhyne, who nCUBE asserts offered an opinion at trial different from the substance of his expert report. Specifically, nCUBE notes that at trial Dr. Rhyne testified that a distributed computer system "should be interpreted as a system where each of the computers that are there are independent and stand alone." (Trial Tr. at 773). In Dr. Rhyne's expert report, nCUBE says he defined "distributed system" as "[a] computer system in which several interconnected computers share the computing tasks assigned to the system." (D.I. 179 at 4). nCUBE argues

that if the jury had been instructed consistent with nCUBE's position that "distributed computer system" does not require each computer to be wholly independent of the others, the jury would have been required to conclude, as nCUBE claimed, that the '312 Patent was anticipated by the prior art. nCUBE further argues that the Court's failure to construe the term in accordance with nCUBE's instruction and the Court's failure to instruct the jury of nCUBE's interpretation permitted the jury to speculate on the meaning of the term when deliberating on the factual issue of whether the '312 Patent was anticipated by the prior art. (D.I. 179 at 7, 8).

SeaChange responds to nCUBE's contentions by asserting that the pretrial context of nCUBE's request for an interpretation of the term "distributed computer system" was proper. SeaChange notes that the pretrial request was in the context of whether the constituent "processor systems" of the distributed computer system had to be real computers capable of running application software. SeaChange contends that, by the Court's affirmative response to the question presented, the Court was correct to decline to give a general interpretation of the term since the Court had resolved the only relevant dispute. (D.I. 186 at 2, 3).

With regard to nCUBE's request at trial for an interpretation of the term, SeaChange contends that nCUBE's request was no more than an effort to involve the Court in rebutting the opinion of SeaChange's expert, which was premised on his understanding of the ordinary meaning of the term. SeaChange adds that by again declining to interpret the term, in the context of trial, the Court advised the parties that the Court's interpretation of the term was consistent with the construction offered by SeaChange's expert. (D.I. 186 at 3).

nCUBE argues that the reason it sought an interpretation from the Court consistent with its interpretation of the term "distributed computer system" was so that *the jury would have had to conclude* that the '312 Patent was anticipated by the prior art. (D.I. 179 at 7). For this reason, nCUBE contends that the Court's unwillingness to construe the term as requested was prejudicial error.

In support of its error contention, nCUBE cites the case of *Advanced Display Systems v. Kent State University*, 212 F.3d 1272 (Fed.Cir.2000). nCUBE argues that in the *Advanced Display* case, the United States Court of Appeals for the Federal Circuit granted a new trial because the district court failed to resolve a purely legal issue (incorporation by reference) prior to giving a factual issue (anticipation) to the jury. nCUBE further argues that "[s]imilarly, in the present case, a new trial is in order because the Court failed to resolve a purely legal issue (claim construction) before submitting the factual issue (validity) to the jury." (D.I. 179 at 8).

After considering nCUBE's contentions, the Court concludes that its failure to construe the preamble term "distributed computer system" was error, however, it was harmless error and not unduly prejudicial to nCUBE's ability to fairly present its invalidity claims.

First, during the time between the issuance of its initial Orders regarding this motion (D.I.203, 209) and this Memorandum Opinion, the Federal Circuit reversed in part this Court's decision in *Eaton Corp. v. Rockwell Int'l Corp.*, Civ. A. 97–421–JJF, 2001 WL 34368391, 2002 U.S. Dist. Lexis 11422 (D.Del. Feb. 9, 2001), *rev'd in part by*, 323 F.3d 1332 (Fed.Cir.2003). In their decision, the Federal Circuit offered further guidance as to the construction of claim preamble terms. Specifically, in *Eaton*, this Court held that a preamble term was not a limitation of a claim term. *Ea-*

*ton Corp. v. Rockwell Int'l Corp.*, 1997 U.S. Dist Lexis 22674 (D.Del. November 4, 1997). On appeal, the Federal Circuit found that the preamble term at issue was in fact a limitation on the claim. The Federal Circuit explained, "[c]laim 14 is an example of the 'claim drafter choosing to use both the preamble and the body to define the subject matter of the claimed invention', as opposed to a preamble citing an intended use for an invention that is defined in its entirety by the body of the claim." *Eaton Corp.*, 323 F.3d at 1340–41 (quoting *Bell Communications Research, Inc. v. Vitalink Communications, Corp.*, 55 F.3d 615, 620 (Fed.Cir.1995)). Additionally, the Federal Circuit stated, "[w]e do not agree with Eaton that the drive line structure in the preamble can be ignored because it merely provides a 'reference point' during one of the claimed method steps." *Eaton Corp.*, 323 F.3d at 1340

Additionally, the Federal Circuit addressed its reasoning in *Vaupel Textilmaschinen KG v. Meccanica Euro Italia, S.P.A.*, 944 F.2d 870 (Fed.Cir.1991), stating that:

> We did not conclude that ... that the term 'breast beam' could be ignored because it appeared in the preamble; in fact the analysis in Vaupel has nothing to do with the issue of whether the preamble was necessary to define a complete invention. Rather the issue was the proper meaning of the term 'breast beam.' We agreed with the district court that the term 'breast beam' meant 'a reference point to fix the direction of movement of woven fabric from the loom' and that this meaning should be applied in the infringement analysis.

*Eaton Corp.*, 323 F.3d at 1341.

In the instant case, this Court declined to construe the preamble term "distributed computer system" and stated:

I have reviewed the claim construction order previously issued. I have reviewed Dr. Rhyne's testimony, and have concluded that the construction requested by nCUBE is not warranted and that the term computer has an ordinary meaning that both sides' experts have given to the patent claims in their giving opinions on validity issues that are before the jury. And therefore I am going to decline to construe at this juncture the term distributed computer system. Now if I were required to construe the term I would construe it in accordance with the definition as I read it in the IEEE dictionary which essentially would require a stand-alone computer in each processor system. So I am not going to construe it, but just so the record is clear, if I thought it was necessary, that's the construction I would give.

Tr. at 988:14–989:8. Thus, the jury was not provided a definition but told they should give all undefined terms their ordinary meaning. Tr. at 1243:19–21. However, the jury asked a question during deliberations, specifically, they asked, what the "s" on processor systems meant, and the Court initially told them that "the 's' on processor systems means only that the computer systems must have at least three processor systems. That is, that the processor system and its central processing unit must be capable at a minimum of operating the application software described in the specification of Sea-Change's '312 Patent." (D.I. 161 at 22:22–23:6). nCUBE objected to this instruction and the Court reinstructed the jury stating:

> There is some thought that I may have again confused you. I just want to repeat that the s on the processor systems means only that the computer system must have at least three processor systems . . . Then page 15 where you got the question from where it says second

processor systems means at least one central processing unit capable of running application type software and at least one mass storage subsystem, do you understand that is the second part of what I am telling you?

(D.I. 161 at 27:13–24).

In this case, the Court concludes that, given the Federal Circuit's guidance in *Eaton*, as to construction of preamble terms, it should have construed the term "distributed computer system." This failure, by itself, however, does not result in prejudicial error given that the Court would have construed the term "distributed computer system" to mean that "essentially [it] would require a stand-alone computer in each processor system", which is a limit to the claim term itself, and not the broader construction that nCUBE requested. Therefore, the Court concludes that the result would have been the same, and therefore, its failure to construe the term was harmless rather than prejudicial error. Of course, if nCUBE's proposed construction is accepted by the Federal Circuit a new trial would be required. Accordingly, given the Court's understanding of the disputed term, it has denied nCUBE's Motion for a New Trial.

### B. *The Court's Construction of "Processor System"*

■ nCUBE contends that the Court's construction of the term "processor system" was wrong. Specifically, nCUBE claims that the Court's construction of this term was too narrow, allowed SeaChange to avoid prior art which would have invalidated the '312 Patent, and resulted in prejudice to nCUBE requiring a new trial. (D.I. 179 at 11). nCUBE contends that the Court, when confronted with a dispute over the term "processor system" in Claim 37 of the '312 Patent, drew from Figure 4 of the '312 Patent, rejected nCUBE's stan-

dard meanings of the term and construed the term as requiring a central processing unit capable of running applications level software. nCUBE contends that the Court's reliance on Figure 4 to support the "notion that the central processing unit must be capable of running 'applications level software' (itself an undefined term) was in error." *Id.*

SeaChange contends that the specification makes clear that the processors are able to run a variety of software and contends that the Court's construction of the term "processor system" was correct.

The Court concludes that its construction of the term "processor system" to mean "at least one central processing unit capable of running application type software, and at least one mass storage subsystem" was correct for the reasons set forth in its Claim Construction Memorandum Opinion dated August 29, 2000 (D.I. 102). Therefore, the Court concludes its construction did not result in prejudicial error.

### C. *The Verdict Was Against the Weight of the Evidence*

In its final claim of error nCUBE contends that the jury's verdict was against the great weight of the evidence. (D.I. 179 at 12–13). nCUBE contends that, assuming a proper construction of the '312 Patent, there is no legally sufficient evidentiary basis for the verdict in this case. *Id.* at 13. nCUBE refers the Court to its Motions for Judgment as a Matter of Law ("JMOL") for its substantive arguments on this ground. *Id.* at 15.

In response, SeaChange contends that nCUBE's evidence which consisted of an expert's conclusory unexplained cataloging of claim elements "supposedly found in various prior art documents" fell short of meeting its burden for a new trial. (D.I. 186 at 5). Additionally, SeaChange refers the Court to its oppositions to nCUBE's "JMOL" motions. *Id.*

In its first Motion for Judgment as a Matter of Law (D.I.175), nCUBE argues that it was entitled to judgment as a matter of law based on the '312 Patent's failure to comply with the written description requirement and the improper claim construction of the Court. Specifically, nCUBE contends that the Court's claim construction in which the claims cover "any network," contravenes the written description requirement because the specification requires a direct point-to-point connection network, fails to describe or suggest the use of another network and in fact teaches away from using other networks. Thus, nCUBE contends, there is nothing in the specification that can support such a broad construction. (D.I. 176 at 3). Additionally, nCUBE argues that the Court's claim construction that the claims cover "any network" is in direct conflict with the specification, the prosecution history and Federal Circuit precedent. *Id.* Specifically, nCUBE contends that during prosecution SeaChange overcame a rejection based on prior art by arguing that its invention used a direct point-to-point connection network. *Id.*

In response, SeaChange contends that the Court's claim construction was correct. (D.I. 188 at 2). Additionally, in regard to the written description requirement, SeaChange contends that nCUBE did not prove invalidity by clear and convincing evidence at trial. *Id.* at 9. SeaChange also contends that patent claims are almost always broader than particular embodiments disclosed in the supporting specification. *Id.* at 10. Finally, SeaChange argues that it provided ample evidence to prove that the '312 Patent complied with the written description requirement. *Id.* at 14–16.

■ First, in regard to nCUBE's contention that the '312 Patent failed to comply with the written description requirement, the Court concludes that the jury's rejection of this argument did not result in prejudicial error because nCUBE failed to prove invalidity by clear and convincing evidence. Simply stated, there is ample precedent for the principle that patent claims can be broader than the particular embodiments disclosed in the supporting specification. *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 93 F.3d 1572, 1582 n. 7 (Fed.Cir.1996) ("the district court confused a claim not supported by the specification [because it recited a specific element not found in the disclosure], which is not allowable, with a broad claim, which is."); *Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 805 F.2d 1558, 1563 (Fed.Cir. 1986) (cautioning against limiting the claimed invention to preferred embodiments or specific examples in the specification); *see also Biacore v. Thermo Bioanalysis Corp.,* 79 F.Supp.2d 422, 468 (D.Del. 1999) ("It is axiomatic that the claims of a patent may be broader than the specific embodiment disclosed in the specification.") (citing *In re Peters,* 723 F.2d 891, 893 (Fed.Cir.1983)). Thus, the Court concludes that the specific embodiment cited in the '312 Patent did not limit the claims to the extent argued by nCUBE.

■ Additionally, the Court concludes that SeaChange presented sufficient evidence to the jury on the written description issue. Specifically, the relevant evidence consisted of: 1) the patent itself; 2) the testimony that the applicant informed the Examiner that Claim 37 was being added to more fully cover the scope of the invention; 3) testimony that the Examiner allowed claim 37 without raising any written description objection; 4) the testimony of Bruce Mann, one of the inventors, who testified that people looking at figure 1 of the patent would understand that you could have used any type of network; and 5) Dr. Rhyne's testimony of the knowledge of one of ordinary skill in the art. *See* 9/21/00 Trial Tr. at 766:11–768:11, 920:15–21.

■ In regard to the Court's claim construction, the Court in its Order dated August 29, 2000, construed the "interconnecting each one of said processor systems through a network for data communications with each other one of said processor systems" in the '312 Patent to mean "establishing data communication between each and every pair of processor systems in the distributed computer system using any kind of network." (D.I.103). The Court concludes that its interpretation is correct for the reasons set forth in its Claim Construction Memorandum Opinion dated August 29, 2000 (D.I.102), and therefore, no prejudicial error resulted from this interpretation.

In its second Motion for Judgment as a Matter of Law nCUBE contends that the '312 Patent is invalid because it is anticipated by prior art and is obvious. (D.I.181 at 1). Specifically, nCUBE contends that prior art anticipates each of the claims in the '312 Patent. *Id.* Additionally, nCUBE argues that the prior art, alone or in combination, renders the claims of the '312 Patent obvious and that SeaChange failed to prove the nexus between the Patent and their proffered secondary considerations. *Id.* at 1–2.

In response, SeaChange contends that nCUBE has not proven invalidity by clear and convincing evidence. Additionally, SeaChange distinguishes the eight prior art references that nCUBE contends render the '312 Patent invalid. (D.I. 187 at 3). Finally, SeaChange contends that, even though it did not have to rely on the secondary factors, it presented sufficient evidence on this subject. *Id.* at 25.

■ The Court concludes that the jury's rejection of nCUBE's invalidity claims of anticipation and obviousness was not against the weight of the evidence. At trial the jury rejected all of nCUBE's defenses and defense theories and found that nCUBE had not proven invalidity by clear and convincing evidence. The Court will address each of nCUBE's asserted prior art references below. Additionally, since the Court concludes that nCUBE did not prove obviousness by clear and convincing evidence, the Court will not address the parties' arguments regarding secondary factors.

First, nCUBE contends that the Gardner reference anticipates and renders obvious each claim of the '312 Patent.

In response to nCUBE's contention, SeaChange argues that Gardner does not teach or suggest a system in which the computer of the distributed processor system runs both client applications and has disks. (D.I. 187 at 7). As a result, SeaChange argues, Gardner does not disclose the claimed "processor systems." *Id.* Also, in regard to obviousness, SeaChange argues that Gardner teaches away from the invention claimed in the '312 Patent. *Id.* at 9. Further, SeaChange points out that the Gardner reference was brought to the Examiner's attention during the '312 Patent prosecution and the Examiner determined that it did not anticipate the '312 Patent nor render it obvious.

The Court concludes that Gardner does not disclose the '312 Patent's claimed "processor systems" as the Court has defined it. Specifically, the Court concludes that Gardner does not teach or suggest a system in which each computer of the distributed computer system runs both client applications and has disks. Therefore, the Court concludes that the jury's rejection of nCUBE's anticipation claim was not against the weight of the evidence.

■ In reference to nCUBE's obviousness argument the Court concludes that Gardner does discuss that such a combined configuration is possible, but Gardner qualifies the suggestion by stating "a 'combined' configuration could have potential drawbacks." (Def. Trial Ex. 42, Col. 15, line 16–21). The Court understands that consideration of the technical feasibility of a combination is sufficient to support a finding of nonobviousness. *See Arkie Lures, Inc. v. Gene Larew, Tackle, Inc.,* 119 F.3d 953, 958 (Fed.Cir.1997) ("The evidence that the combination was not viewed as technically feasible must be considered, for conventional wisdom that a combination should not be made is evidence of nonobviousness."). Based on the Gardner language, the Court concludes that the jury's rejection of nCUBE's obviousness defense based on the Gardner reference was not against the weight of the evidence.

Second, nCUBE contends that the Frey reference anticipates and in combination with other references renders the '312 Patent obvious. The Frey reference disclosed a method used on multi-processing computers that have "a multiplicity of independent computer/disk systems all of which operate in parallel on discrete portions of a problem." (Def. Trial ex. 428 at 1:14–17).

In response, SeaChange contends that, as Dr. Rhyne testified, Frey does not disclose the claimed "processor systems." (D.I. 187 at 10). SeaChange argues that Dr. Ryhne's testimony is "sufficient to sustain the jury's verdict that Frey is not an invalidating reference." *Id.* at 11.

The Court concludes that in such systems, as Dr. Rhyne testified, each node would be too small to run the entire application program and therefore it is not a distributed computer system as the '312 Patent discloses. Dr. Rhyne's testimony was credible and the Court concludes that Frey does not disclose "processor sys-

tems" as claimed in the '312 Patent. Additionally, the Court finds that there was no motivation or suggestion to modify or combine the Frey reference with other prior art references. Thus, the Court concludes that the jury's rejection of nCUBE's defenses of anticipation and obviousness based on the Frey reference was not against the weight of the evidence.

Third, nCUBE contends that the Zebra reference anticipates and in combination with other references renders the '312 Patent obvious. The Zebra reference discloses a client/server network where the clients run the application software and the servers store the data.

In response, SeaChange contends that the Zebra reference is "Gardner all over again." (D.I. 187 at 11). SeaChange argues that Zebra, like Gardner, discloses a client/server network where the clients run the application software and the servers store the data. *Id.* Additionally, SeaChange contends that even though Zebra discloses that it is possible for one machine to be both a storage server and a client, Zebra does not suggest the benefit of combining the clients and the servers into at least three processor systems nor does it suggest bringing in data through one of these combined machines and distributing it to other combined machines. *Id.* Moreover, SeaChange argues that there was no motivation to combine the Zebra reference with other references in order to render the '312 Patent obvious. *Id.* at 24.

The Court concludes that, although the Zebra reference discloses that it is possible for one machine to be both a storage server and a client, Zebra does not teach or suggest the benefit of combining at least three clients with three servers into at least three processor systems. Additionally, the Court concludes that the Zebra reference does not teach or suggest bringing in data through one of these combined machines and distributing it to a number of other combined machines, as is required by the claims of the '312 Patent. Also, the Court finds that there was no motivation or suggestion to modify or combine the Zebra reference with other references in order to render the '312 Patent obvious. Thus, the Court concludes that the jury's finding that the Zebra reference did not anticipate or render obvious the '312 Patent should not be overturned.

Fourth, nCUBE contends that the Mendelsohn reference anticipates and in combination with other references renders the '312 Patent obvious. The Mendelsohn reference discloses a disk array that acts as a data server for an unidentified host computer system.

In response, SeaChange contends that the Mendelsohn reference does not disclose nodes that run application software. *Id.* at 11. Additionally, SeaChange argues that Dr. Rhyne, in testifying that the meaning of "processor" as used in the Mendelsohn reference is not the same as the meaning used in the '312 patent, provided ample support for his opinions. *Id.* at 12. Finally, SeaChange notes that the Mendelsohn reference discloses two nodes, node "12" which cannot run application software and node "24" which can. As a result, SeaChange argues that node "12" cannot be a processor system and node "24" does not have disks so it is also not a processor system.

The Court concludes that there is no disclosure that node "12" in Mendelsohn can run application software or that node "24" has disks. Additionally Dr. Rhyne testified that when Mendelsohn used the word "processor," he was not talking of a "processor" in the sense of the '312 Patent, but instead about a controller that just controlled the operation of the disk drive. Therefore, the Court concludes that the reference does not disclose "at least three processor systems" as the '312 patent does

and finds that there was no motivation or suggestion to modify or combine the Mendelsohn reference with other reference to render the '312 Patent obvious. As a result, the Court concludes that the jury's rejection of nCUBE's defenses that the Mendelsohn reference anticipates or renders the '312 Patent obvious is not against the weight of the evidence.

Fifth, nCUBE claims that the TickerTAIP reference anticipates or in combination with other references renders the '312 Patent obvious. The TickerTAIP reference discloses a storage server that is connected to a host computer where the client applications would be run on the host and not on the storage server.

In response, SeaChange contends that because applications programs are run on the host rather than the storage server in the TickerTAIP reference it does not disclose "processor systems." *Id.* at 13. Additionally, SeaChange contends that Dr. Ryhne's testimony on TickerTAIP's "reason for being" was legally sufficient. *Id.* SeaChange also contends that the last sentence of the TickerTAIP reference which states that the architecture would be "well suited for use in multicomputers with locally attached disks", does not disclose the invention of the '312 Patent. *Id.* at 14. SeaChange argues that this sentence demonstrates that the actual system disclosed was not a multicomputer system and beyond that, the sentence is ambiguous. *Id.* Also, SeaChange argues that there was no evidence establishing that transputers could run medical applications as nCUBE suggests. *Id.* Finally, SeaChange argues that there was no motivation to modify this reference to arrive at the claimed invention because TickerTAIP taught away from the claimed invention. *Id.* at 23.

The Court concludes that the TickerTAIP reference did not disclose the claimed invention. Dr. Rhyne, testified that TickerTAIP disclosed a disk array that did not run the applications programs. In light of this testimony, the Court concludes that the TickerTAIP reference does not disclose the processor systems of the '312 Patent. Additionally, the Court concludes that the last sentence of the TickerTAIP reference is ambiguous and does not disclose the claimed invention. Further, the Court finds that there was no motivation or suggestion to modify or combine the TickerTAIP reference with other references to render the '312 Patent obvious. Additionally, the Court finds that the TickerTAIP reference taught away from the invention claimed in the '312 Patent, and therefore, the Court concludes that the jury's rejection of nCUBE's anticipation and obviousness defenses in regard to the TickerTAIP reference was not against the weight of the evidence.

Sixth, nCUBE contends that nCUBE 2 anticipates or in combination with other references renders the '312 Patent obvious.

In response, SeaChange argues that because it is undisputed that the nCUBE 2 product had separate and distinct processor arrays and Input/Output ("I/O") arrays, it was reasonable for a jury to determine that nCUBE 2 did not anticipate or render obvious the '312 Patent. *Id.* at 15. Additionally, SeaChange argues that nCUBE's assertion that the five nodes in nCUBE 2 acted as a single processor system was a question of fact given to the jury, which the jury rejected. *Id.* at 15–16. Also, SeaChange contends that the processor nodes in nCUBE 2 are not stand alone computers as required by the '312 Patent. *Id.* at 16. Finally, SeaChange argues that there was no motivation to combine or modify the nCUBE 2 reference to render the '312 Patent obvious. *Id.* at 23.

The Court concludes that it is undisputed that the nCUBE product has separate

and distinct processor arrays and I/O arrays, as nCUBE stated in its Opening Brief for its JMOL Motion, "[b]ecause their processing power was limited by the technology of the time, the functions performed by the processors were divided. Some CPU's were located on the I/O (input/output) board and interfaced with the disks, while other CPU's were located on what was called an 'array board.'" (D.I. 181 at 20). nCUBE also contends that the five processors, the one array processor and the four I/O controllers as a group met the Court's claim construction. However, the only evidence presented on this matter was the testimony of witnesses. The Court finds that the jury weighed the credibility of the witnesses and rejected this contention. Moreover, each processor node in nCUBE 2 is not a stand alone computer as required by the claims of the '312 patent. Thus, the Court concludes that the reference does not disclose "at least three processor systems" and finds that there was no motivation or suggestion to modify or combine the nCUBE 2 reference with other references to render the '312 Patent obvious. Therefore, the Court concludes that the jury's rejection of nCUBE's invalidity defenses in regard to the nCUBE 2 reference was not against the weight of the evidence.

Seventh, nCUBE contends that the MediaCUBE 3 reference anticipates or in combination with other references renders the '312 Patent obvious.

In response, SeaChange contends that MediaCUBE 3 is not a prior art reference. *Id.* at 17. Additionally, SeaChange contends that, even if MediaCUBE 3 is prior art, it did not have a network of stand alone computers and therefore is not a processor system as claimed in the '312 Patent. *Id.*

First, the Court notes that there is a question concerning whether the MediaCUBE 3 reference is in fact prior art.

nCUBE, relying on confidential engineering documents from 1994, attempted to establish that MediaCUBE 3 was prior art; however, nCUBE provided the jury little documentary evidence on this subject. Further, Mr. O'Malley, nCUBE's witness on the MediaCUBE 3 reference, admitted that there was a lot of confusion concerning the architecture of MediaCUBE 3 in the 1994 time period. (9/19/00 Trial Tr. at 469:11–18). Moreover, the Court concludes that even if MediaCUBE 3 was prior art, it did not have a network of stand alone computers as claimed in the '312 Patent (i.e. each node is not a processor system), rather each node of the MediaCUBE 3 shared a common clock. Considering this evidence, the Court concludes that the reference does not disclose "at least three processor systems" and finds that there was no motivation or suggestion to modify or combine the MediaCUBE 3 reference with other reference to render the '312 Patent obvious. Therefore, the Court concludes that the jury's rejection of nCUBE's invalidity defense in regard to the MediaCUBE 3 reference was not against the weight of the evidence.

Eighth, nCUBE contends that the VAX-Cluster reference anticipates and in combination with other references renders the '312 Patent obvious. nCUBE asserts that "Claims 37 and 52 read on RAID–1 mirroring" (D.I. 181 at 24).

In response, SeaChange contends that nCUBE's assertion is incorrect because unlike RAID–1 mirroring, the '312 Patent does not store two complete copies of the data on its three or more processing systems. *Id.* at 20. Additionally, SeaChange contends that claims 33, 35, 69 and 71 cannot be relied on by nCUBE because they were not asserted at trial or construed by the Court. *Id.* at 20.

The Court finds that the claims require that "a portion of the redundant

representation of the data" be stored at each processor system. A "portion" is less than a whole. In RAID–1 mirroring, a complete copy of the data is stored on a separate disk. On the other hand, the claimed invention of the '312 Patent does not store two complete copies of data on its three or more processor systems. Further, the Court believes that claims 33, 35, 69 and 71 do not affect its analysis because they were not asserted at trial nor construed by the Court. Also, the Court finds that VAXCluster fails to teach or suggest the use of a RAID–5 or similar storage process across three or more processor systems. Thus, the Court concludes that the reference does not disclose "at least three processor systems" and finds that there was no motivation or suggestion to modify or combine the VAXCluster reference with other references to render the '312 Patent obvious. Therefore, the Court concludes that the jury's rejection of nCUBE's invalidity defense in regard to the VAXCluster reference was not against the weight of the evidence.

An appropriate Order has been entered.